UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ALEKSANDRA SHKLYAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:22 CV 391 RWS |
| | ) | |
| CARBOLINE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This case is before me on the motion to dismiss filed by Defendant Carboline Company pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff Aleksandra Shklyar brings claims against Carboline, her former employer, for alleged discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"). The alleged violations arise out of policies implemented by Carboline in response to the COVID-19 pandemic. For the reasons discussed below, Carboline's motion will be granted.

## BACKGROUND

Shklyar was employed by Carboline as an Organic Fireproofing Lab Manager from December 2005 to September 2021. Shklyar alleges that, beginning in May 2021, she was perceived by Carboline as having a disability and was subjected to adverse employment actions prohibited under the ADA. Specifically, Shklyar

alleges that she was "perceived as disabled with a contagious disease;" was "misclassified as having an impaired immune system and an impaired respiratory system;" was required to use "mitigation measures to perform several major life activities in the workplace;" and was "not allowed to work because of [Carboline's] discriminatory perceptions, policies and procedures." The alleged discriminatory policies referred to by Shklyar were Carboline's COVID-19 policies.

Shklyar alleges that Carboline's COVID-19 policies were implemented to mitigate the disability that she was regarded as having. Shklyar alleges further that the policies harassed, isolated, segregated, limited, classified, denied equal access, and imposed non-job-related medical examinations and inquiries upon her. For example, Shklyar claims that the policies limited her right to invoke ADA protections because they failed to recognize that she could claim a reason under federal law for refusing to comply and, instead, insisted that she could only claim a medical or religious exemption. Shklyar also claims that the policies classified her in such a way that her employment opportunities were adversely affected and limited because Carboline "would not permit [her] to do her job without first submitting to [its] accommodations ('mitigation measures')."

Shklyar alleges that she objected to Carboline's COVID-19 policies and that Carboline nevertheless "continued to impose accommodations" upon her. The alleged accommodations imposed upon Shklyar included, among other things,

medical examinations (e.g., nasal tissue testing and temperature checks) and medical interventions (e.g., mask-wearing, isolation, and social distancing).  Shklyar alleges that, despite her objections, Carboline continued to harass her by "sending [her] numerous communications coercing [her] to accept various accommodations or suffer adverse employment actions."  Shklyar also alleges that Carboline began retaliating against her in September 2021 by, among other things, "interfering with her rights, imposing punitive measures including isolation and medical examinations, withholding her pay, and ultimately terminating her employment."

Shklyar filed this lawsuit against Carboline on April 4, 2022, then filed an amended complaint about a month later.  In her amended complaint, Shklyar brings two claims under the ADA: (Count I) a claim for discrimination; and (Count II) a claim for retaliation.  After filing her amended complaint, Shklyar also filed a motion to appoint a special master, arguing that a special master is necessary in this case because "an exceptional condition exists whereby the court seeks to impose the same illegal policies as the defendant …, is also receiving disaster relief compensation and subsidies for practicing these illegal policies, and cannot therefore be expected to act impartially."  Carboline filed its motion to dismiss shortly thereafter.

## LEGAL STANDARD

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint.  In ruling on such a motion, I must accept all factual

allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Hager v. Arkansas Dept. of Health, 735 F.3d 1009, 1013 (8th Cir. 2013). I may not, however, "presume the truth of legal conclusions couched as factual allegations." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  While I also must generally ignore materials that are outside of the pleadings, I may consider "materials that are necessarily embraced by the pleadings and exhibits attached to the complaint." Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n. 4 (8th Cir. 2003).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff need not provide "detailed factual allegations" but must provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim is plausible on its face when the plaintiff pleads sufficient facts to allow me to draw "the reasonable inference that the defendant is liable for the misconduct alleged." Id.  This requires a complaint to contain enough factual allegations "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A threadbare recital of the elements of a cause of action, supported merely by conclusory allegations, is not sufficient. Iqbal, 556 U.S. at 678.

## DISCUSSION

Carboline moves to dismiss Shklyar's amended complaint in its entirety pursuant to Rule 12(b)(6) on the grounds that Shklyar has failed to allege sufficient

4

facts to support her claims.  As noted above, Shklyar brings two claims under the ADA: (Count I) a claim for discrimination; and (Count II) a claim for retaliation.  I will discuss each claim in turn.

### A.    Count I – Discrimination

Count I will be dismissed because Shklyar has failed to state a claim for disability discrimination.  To state a claim for discrimination under the ADA, a plaintiff must plausibly allege that she "(1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) has suffered an adverse employment action because of her disability."  Hill v. Walker, 737 F.3d 1209, 1216 (8th Cir. 2013).  Shklyar's discrimination claim fails because she has not plausibly alleged that she is disabled within the meaning of the ADA.

Under the ADA, a disabled person is defined as an individual with "a physical or mental impairment that substantially limits one or more of that person's major life activities, an individual who has a record of such an impairment, or an individual who is regarded as having such an impairment."  Scheffler v. Dohman, 785 F.3d 1260, 1261 (8th Cir. 2015) (citing 42 U.S.C. § 12102(1)).  From Shklyar's amended complaint, it appears that she seeks to proceed under the latter two definitions.  See, e.g., Doc. 8 at ¶ 32 (alleging that "Plaintiff may proceed under the 'regarded as' prong and the 'record of' prong"); id. at ¶ 45 (alleging that, "[i]n May of 2021,

defendant began regarding plaintiff as having the disability of a contagious disease and made a record of such disability").

Shklyar has not plausibly alleged that she is disabled based on a record of a disability.  To state a claim for disability discrimination based on a record of a disability, a plaintiff must plausibly allege that she has "a history of an impairment that substantially limited one or more major life activities when compared to most people in the general population, or was misclassified as having had such an impairment."  29 C.F.R. § 1630.2(k)(2); see also Taylor v. Nimock's Oil Co., 214 F.3d 957, 961 (8th Cir. 2001) (quoting 29 C.F.R. § 1630.2(k)) ("Having a record of a qualifying impairment means that an employee 'has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.'").

In her amended complaint, Shklyar alleges that Carboline made a record of her having "the disability of a contagious disease" by "mis-classifying her as substantially limited with impaired immune and respiratory systems affecting her ability to perform major life activities in the workplace including working, communicating with others, performing manual tasks, talking, and breathing without the use of mitigation measures."  Doc. 8 at ¶¶ 23 & 45.  Shklyar also alleges that Carboline's COVID-19 policies "classified [her] in such a way that [her] employment opportunities were adversely affected and limited because [Carboline]

6

would not permit [her] to do her job without first submitting to [its] accommodations ('mitigation measures')." Id. at ¶ 52.

Although Shklyar alleges that Carboline made a record of her having a disability by misclassifying her as having impaired immune and respiratory systems, this conclusory allegation is implausible in light of the materials attached to her amended complaint. For example, in an e-mail dated September 1, 2021, Carboline's Vice President of Research, Development, and Innovation ("RD&I") sent the following message to Carboline's RD&I employees, including Shklyar:

> All,
>
> You should all be aware of the new policy regarding masks and vaccinations. If you are not vaccinated you must properly wear a mask unless you are in your cubicle, office, or eating at a table in the lunch room.
>
> All visitors need to provide proof of a vaccination … or they will be required to wear a mask.
>
> Proof of vaccination for all employees needs to be shown to HR if you want to not wear a mask. … This is no different tha[n] using proper safety equipment, such as safety glasses etc.
>
> Violation of the policy will lead to disciplinary actions up to and including termination. Not properly wearing a mask … will also lead to disciplinary actions, up to and including termination.
>
> This should be taken seriously as we have already terminated employees for not following the policy.

Doc. 8-1 at p. 13. In a letter dated a week later, Carboline's Vice President of Human Resources sent a message to Shklyar specifically:

7

As you are aware, to address Carboline's safety concerns for our employees and business operations during the COVID-19 pandemic, Carboline … implemented COVID-19 protocols starting in May 2020, which, in part, have required employees at our St. Louis Headquarters and RD&I facilities to wear a mask in common work areas. Since May 2020, Carboline updated these protocols periodically throughout the pandemic to respond to the shifting health and safety risks to employees performing in-person work. Carboline emailed these updates to all employees including you. Carboline's current COVID-19 protocols implemented in May 2021 require unvaccinated employees to wear a face covering (mask) in common employee work areas. If an employee is unable to wear a mask, then the employee can discuss the use of alternative options such as a face shield or may seek a reasonable accommodation. You have received all notices about Carboline's requirement to wear a face covering, which you complied with for one year prior to the updated face covering requirement of May 2021. The May 2021 update requires that unvaccinated employees continue to wear a mask in common areas, which you have refused to do. Since June 2021, … your manager, … the VP of RD&I, and … [a] Human Resources Generalist, have discussed multiple times with you that you are in violation of the face-covering requirement. In August 2021, [the VP of RD&I] sent a follow-up email to all RD&I employees including you stating that all RD&I employees are expected to comply with this requirement and that failure to do so would result in disciplinary action, up to and including termination. Thereafter, you continued to refuse to wear a mask in common areas and you remain unvaccinated.

In June 2021, you requested not to wear a mask in common areas based on a disability. We have continued an interactive process with you since June 2021, to address a reasonable accommodation but as of today we have not received any other alternative suggestions or proper documentation from you to provide a reasonable accommodation.[1]

We can discuss Carboline's mask requirements, any proposed accommodations to the mask policy, as well as the eight questions you raised in your letter tomorrow morning at 7:30 a.m.

---

[1] Shklyar does not claim in this case that she has an actual disability that Carboline failed to reasonably accommodate. In fact, Shklyar states that "[i]f [she] had previously made at least one request for reasonable modifications, [she] has since withdrawn such request." Doc. 8 at ¶ 57.

Id. at pp. 20–21.  These communications make clear that Carboline's COVID-19 policies were generally applicable to all of Carboline's RD&I employees.

Given the general applicability of Carboline's COVID-19 policies, Shklyar's conclusory allegation that Carboline misclassified her as having a disability is implausible.  Indeed, it is not reasonable to infer from Shklyar's amended complaint and the materials attached thereto that Carboline misclassified Shklyar as having "an impairment that substantially limited one or more major life activities when compared to most people in the general population."  To the contrary, the materials attached to Shklyar's amended complaint show that Carboline classified Shklyar in the same way that it classified all of its RD&I employees.  Inferring that Carboline misclassified Shklyar as having a disability would therefore require inferring that Carboline misclassified all of its RD&I employees as having a disability.  Such an inference is not reasonable.  As a result, Shklyar has not plausibly alleged that Carboline misclassified her as having a disability, and she cannot proceed under a theory of being disabled based on a record of a disability.[2]

Nor has Shklyar plausibly alleged that she is disabled based on having been regarded as having a disability.  To state a claim for disability discrimination based on having been regarded as having a disability, a plaintiff must plausibly allege that

_____

[2] Shklyar does not allege that she has "a history of an impairment" that substantially limited a major life activity; she alleges only that Carboline misclassified her as having such an impairment.

she "'has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.'"  <u>Scheffler</u>, 785 F.3d at 1262 (quoting 42 U.S.C. § 12102(3)).

In her amended complaint, Shklyar alleges that in May 2021 Carboline "began regarding [her] as having the disability of a contagious disease and … as being substantially limited with an impaired immune system and an impaired respiratory system."  Doc. 8 at ¶ 45; <u>see also</u> <u>id.</u> at ¶ 16 (alleging that "plaintiff was perceived as disabled with a contagious disease … [and] as having an impaired immune system and an impaired respiratory system").  Shklyar also alleges that Carboline's COVID-19 policies were "specifically implemented for the purpose of mitigating the disability which it regard[ed] [her] as having."  <u>Id.</u> at ¶ 35.

Much like her allegation that Carboline misclassified her as having a disability, Shklyar's conclusory allegation that Carboline regarded her as having a disability is implausible.  As discussed above, materials attached to Shklyar's amended complaint make clear that Carboline's COVID-19 policies were generally applicable to all of Carboline's RD&I employees.  Doc. 8-1 at pp. 13, 20–21.  Shklyar nevertheless alleges that, by implementing its COVID-19 policies and requiring that she comply with them, Carboline regarded her as having the disability of a contagious disease and as being substantially limited with impaired immune and

10

respiratory systems.  This conclusory allegation is simply implausible in light of the general applicability of Carboline's COVID-19 policies.  As with Shklyar's allegation that Carboline misclassified her as having a disability, to infer that Carboline regarded her as having a disability would require inferring that Carboline regarded all of its RD&I employees as having a disability.  This too is not a reasonable inference.  Accordingly, Shklyar has also not plausibly alleged that Carboline regarded her as having a disability.

Because Shklyar has neither plausibly alleged that Carboline misclassified her as having a disability nor plausibly alleged that Carboline regarded her as having a disability, she has failed to plausibly allege the existence of an essential element of her discrimination claim: that she is disabled within the meaning of the ADA.  For this reason alone, Shklyar's discrimination claim fails and will therefore be dismissed.  See Scheffler, 785 F.3d at 1261–62 (affirming district court's dismissal of ADA claim where plaintiff "failed to allege facts that would support that he ha[d] a disability as defined by the ADA").

### B.    Count II – Retaliation

Count II will also be dismissed because Shklyar has failed to state a claim for retaliation.  To state a claim for retaliation under the ADA, a plaintiff must plausibly allege that "(1) she engaged in a statutorily protected activity, (2) the employer took an adverse action against her, and (3) there was a causal connection between the

adverse action and the protected activity." Hill, 737 F.3d at 1218 (citing Amir v. St. Louis Univ., 184 F.3d 1017, 1025 (8th Cir. 1999)).  Shklyar's retaliation claim fails because she has not plausibly alleged that there was a causal connection between her alleged protected activity and the alleged adverse action taken against her.

In her amended complaint, Shklyar alleges that she notified Carboline "of her good faith opposition to discriminatory policies and procedures" on many occasions. Doc. 8 at ¶ 24.  Shklyar also alleges that, on September 3, 2021, Carboline "began unceasingly to retaliate against [her] despite [her] reasonable good faith belief that she was exercising opposition to discrimination and claiming rights protected under the ADA."  Id. at ¶ 71; see also id. at ¶ 37 (alleging that "defendant embarked on a series of adverse employment actions against plaintiff which were designed to deter plaintiff's good faith opposition to the policies and procedures").  According to Shklyar, Carboline retaliated against her by "interfering with her rights, imposing punitive measures including isolation and medical examinations, withholding her pay, and ultimately terminating her employment."  Id. at ¶ 21.

Even assuming that Shklyar has plausibly alleged that her "good faith opposition" was protected activity and that the action taken against her was adverse action, her retaliation claim fails because she has not plausibly alleged that there was a causal connection between her protected activity and the adverse action taken against her.  As shown by the letter to Shklyar from Carboline's Vice President of

12

Human Resources, Carboline initially implemented its COVID-19 policies in May 2020.  Doc. 8-1 at p. 20.  Shklyar complied with the policies until they were updated in May 2021.  Id.  Thereafter, Shklyar for the first time claimed a protected status under the ADA and notified Carboline of her opposition to the policies.  Id. at pp. 15 & 20.  It was not until Shklyar had refused to comply with the policies for several months that Carboline took any sort of adverse action against her, and the adverse action was taken because of her repeated failure to comply with the policies and her continued insubordination.  Id. at pp. 16, 20, 22–24, 52–53.

Given that the adverse action taken against Shklyar was taken pursuant to policies that were implemented before Shklyar engaged in her alleged protected activity, it is not reasonable to infer that there was a causal connection between the two events.  Cf. O'Hailpin v. Hawaiian Airlines, Inc., No. 22-00007 JAO-KJM, 2022 WL 314155, at *11 (D. Haw. Feb. 2, 2022) ("Plaintiffs are unlikely to establish a prima facie case of retaliation … because the adverse employment actions … appear to be unconnected to their RA requests.  Indeed, the vaccine policy was established, as well as the consequences for failing to comply[,] … before Plaintiffs submitted their RA requests."); Together Emps. v. Mass Gen. Brigham Inc., No. 21-11686-FDS, 2021 WL 5234394, at *20 (D. Mass. Nov. 10, 2021) (finding plaintiffs likely could not show a causal connection between protected activity and adverse employment action where defendant asserted that "plaintiffs [were] subject to unpaid

leave and potential termination not because they requested exemption, but because they were not approved and remain[ed] noncompliant with the Vaccination Policy"). Because Shklyar has not plausibly alleged that there was a causal connection between her alleged protected activity and the adverse action taken against her, her retaliation claim fails and will also be dismissed.

## CONCLUSION

Shklyar has failed to state a claim for either discrimination or retaliation under the ADA.  As a result, Carboline's motion will be granted, and Shklyar's amended complaint will be dismissed with prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Carboline Company's motion to dismiss [12] is **GRANTED**, and Plaintiff Aleksandra Shklyar's amended complaint [8] will be **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that all other pending motions are **DENIED** as moot.

A separate Judgment in accordance with this Memorandum and Order will be entered this same date.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 21st day of July 2022.

14